# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | CRIM. NO. 2010-29 |
| v. ) | |
| ) | |
| KALIF FLANDERS ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**ATTORNEYS:**

**Denise A. Hinds, AUSA**
St. Croix, U.S.V.I.
      For the Plaintiff.

**Emile A. Henderson, III, Esq**.
      For the Defendant.

## MEMORANDUM OPINION

Gómez, C.J.

Before the Court is the appeal of Defendant Kalif Flanders of an order entered by the United States Magistrate Judge on August 13, 2010 requiring Defendant to provide a saliva sample for testing.[1]

### I. FACTS

---

[1] Flanders also asks the Court to stay the order during consideration of his appeal. However, The Local Rules of Civil Procedure require a party seeking a stay of a magistrate's order to seek relief from the magistrate judge whose order has been objected to. LRCi 72.2(b). In any case, because the order to provide saliva will be vacated, the motion for a stay is moot.

Kalif Flanders and Gillian Harper are charged with first degree murder and various firearms charges under federal and local Virgin Islands law. On August 3, 2010, the Government filed a motion to require Defendants to supply an oral saliva sample. Flanders opposed the motion on the ground that the Government had not established a sufficient connection between the saliva sample and the crimes charged, as required by the Fourth Amendment. A hearing was held on the matter on August 13, 2010.[2]

At the hearing, the Government relied on its motions and the affidavit of Virgin Islands Police Department detective Officer Cureene Smith. Smith also testified at the hearing regarding items recovered during the investigation of this criminal matter.

According to Smith, on the morning of May 13, 2010, Louis Orlando Encarnacion was beaten and shot in the head by two assailants in the Stables area behind the Evelyn Williams School in Mount Pleasant. Shortly before the murder, Flanders was seen with Encarnacion, first at Encarnacion's house and then walking with him towards the area where his body was later recovered. During the same time period, Harper was seen standing on the road leading to the Stables and within view of Encarnacion's house. Witnesses saw Flanders and Harper leaving the Stables area together moments after a gunshot was heard.

Smith also testified that a cell phone, eye-glasses and a screw driver were found at the crime scene, blood-stained Timberland boots were found at Gillian Harper's home, and two T-shirts were recovered from a residence adjacent to the crime scene. Smith did not know whether these items had been swabbed for DNA but indicated that it was customary for the forensics

---

[2] Prior to the motion to supply a saliva sample, the Government had filed a motion to require defendants to supply a blood sample. That motion was granted by the Magistrate Judge, and the order was appealed by Flanders. However, the Government withdrew its motion to supply a blood sample after it filed the motion to supply a saliva sample. Thus, the appeal of the order to supply a blood sample is no longer before the Court.

2

department to test items of evidence for DNA, and that it was possible to recover DNA from those items. The Government argued that a DNA sample from the Defendants had evidentiary value in that it could be compared with DNA recovered from the aforesaid items, thereby linking Defendants to the crime. With regard to the T-shirts, the Government explained that when Flanders was observed with Encarnacion shortly before he was murdered, Flanders was wearing a T-shirt, but that following the murder Flanders was seen in the vicinity of the crime scene and the Mount Pleasant residence without one. The Government, proceeding on the theory that Flanders had discarded his T-shirt at the residence because it contained evidence of the crime, sought to discover whether either of those T-shirts belonged to Flanders.

At the hearing, the Magistrate Judge orally granted the Government's motion, finding that taking the saliva sample for comparison with evidence found at or near the crime scene and other evidence identified during the criminal investigation did not infringe on the Defendants' Fourth or Fifth Amendment rights. The Magistrate also entered a written order granting the Government's motion. In the written order, the Magistrate made the following findings. First, the Magistrate found that based on the affidavit of Virgin Islands Police Department Detective Cureene Smith, there was probable cause to support the charges against the Defendants. The Magistrate also determined that the ends of justice would be served by the saliva extraction for comparison of the Defendants' DNA with evidence located at or about the crime scene.

## II. DISCUSSION

### A. Standard of Review for Appeal of Magistrate's Order

Rule 59(a) of the Federal Rules of Criminal Procedure authorizes a magistrate judge to determine any matter that "does not dispose of a charge or defense." Rule 59(a) also provides a

party the right to appeal the magistrate judge's order "within 10 days after being served with a copy of a written order or after the oral order is stated on the record, or at some other time the court sets." Upon a party's timely objection, Rule 59(a) requires the district judge to "modify or set aside any part of the order that is contrary to law or clearly erroneous."[3] "A magistrate's finding of law is contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law." *United States v. Chitolie*, 2010 WL 2384550, at *3 (D.V.I. June 8, 2010). A factual finding is clearly erroneous when it "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id*. (citing *Haines v. Ligget Group Inc.*, 975 F.2d 81, 92 (3d Cir.1992)). Under the clearly erroneous standard, a reviewing court can only upset a magistrate's finding of fact, "if the court has the definite and firm conviction that a mistake has been committed." *Haines*, 975 F.2d at 92 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III.   ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches and seizures by imposing a warrant requirement and further requiring that such warrant shall not issue but upon probable cause. U.S. Const. amend. IV. It is well-established law that the Fourth Amendment is implicated when a search involves an intrusion into the human body. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989) (breathalyzer and urine sample); *Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (finger nail scrapings); *Schmerber v. California*, 384 U.S.

---

[3] Flanders and the Government both rely on Rule 58(g)(2)(A) of the Federal Rules of Criminal Procedure as a basis for this appeal. However, reliance on Rule 58(g)(2)(A) is erroneous because that rule governs appeals of magistrate orders in matters involving petty offenses and misdemeanors and the crimes charged herein are felonies.

757, 767-71 (1966) (blood); *Friedman v. Boucher*, 580 F.3d 847, 852-53 (9th Cir. 2009) (buccal swab)); *Banks v. United States*, 490 F.3d 1178, 1183 (10th Cir. 2007) (same)). Moreover, just as "[s]earch warrants are ordinarily required for searches of dwellings . . . absent an emergency, no less could be required where intrusions into the human body are concerned." *Schmerber*, 384 U.S. at 770. "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id*. In the absence of a recognized exception to the warrant requirement, a warrantless search and seizure is per se unreasonable under the Fourth Amendment. *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008).

In this case, the Government cited no recognized exception to the warrant requirement but sought to secure a saliva sample from Defendants through a court order. However, the Federal Rules of Criminal Procedure do not provide for such an order pursuant to a government motion. *United States v. Allen*, 337 F. Supp. 1041, 1043 (E.D.Pa. 1972). Indeed, in *Allen*, the district court was confronted with similar circumstances. In that case, the court held that the "proper and lawful procedure" for establishing the government's right to the saliva samples is by applying for a warrant under Rule 41. *Id*. (citing Rule 41 of the Federal Rules of Criminal Procedure); *see also United States v. Felix*, 2007 WL 173892, at *8 (S.D. Cal. 2007) (denying government's motion for an order compelling defendant to provide a new DNA sample and directing government to apply for a search warrant).

The fact that the Defendants were charged with crimes prior to the Government's efforts to obtain saliva is of no moment since "[t]he power to issue warrants for search and seizure does not terminate in a given case with the bringing of an indictment." *Id*.

Additionally, even if the Court viewed the Government's motion as an application for a warrant under Rule 41, the Magistrate Judge applied an improper standard in granting the motion. Here, the Government's motion was granted on the basis that there was probable cause to believe that Flanders and Harper had committed the crimes charged. That factual finding supports an arrest warrant but does not, standing alone, justify the issuance of a warrant. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556-557 n.6 (1978) (distinguishing the basis for an arrest warrant as opposed to a search warrant).

Probable cause exists for a search warrant where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or *evidence of a crime* will be found in a particular place." *United States v. Vosburgh*, 602 F.3d 512, 525-26 (3d Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213 (1983) (emphasis added)); *see also Zurcher*, 436 U.S. at 557 n.6 (a search warrant is supported by probable cause where "the items sought are in fact seizable by virtue of being connected with criminal activity"). Thus, the issuance of a search warrant for DNA is only proper where the affidavit supporting the application provides a basis for believing that the individual's DNA can link the individual to a criminal act. *See, e.g., United States v. Bonds*, 12 F.3d 540, 549 (6th Cir. 1993) (affirming magistrate finding of probable cause to issue a search warrant for blood and hair samples when affidavit established that DNA could link the suspect to blood stains found in a car used in connection with a homicide); *United States v. Solomon*, 2007 WL 927960, at *4 (W.D. Pa. 2007) (where there was probable cause to believe that defendant handled the 9mm Glock handgun used in a homicide, and from which a DNA "swipe" had been obtained, affidavit alleged facts sufficient to establish probable cause that defendant's genetic material would be linked to evidence from the crime). Although the Government witness Smith

testified as to the evidence recovered from the crime scene and other locations allegedly associated with the Defendants, there was no finding made in the instant case that the DNA samples could link Flanders and Harper to the crimes charged.

## IV. CONCLUSION

For the foregoing reasons, Flanders' appeal will be granted and the order to provide saliva samples will be vacated.[4] To the extent that the Government wishes to obtain defendants' DNA samples, it may do so through the well-established procedure of a search warrant as outlined in *United States v. Allen*, 337 F. Supp. at 1043. An appropriate order follows.

**ENTER**:

Dated: September 15, 2010

                        S\_____
                              CURTIS V. GÓMEZ
                              CHIEF JUDGE

---

[4] For the same reasons, the order to supply saliva, as applied to Harper, is also vacated.