IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | CRIM. NO. 2010-29 |
| v. ) | |
| ) | |
| KALIF FLANDERS ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ATTORNEYS:**

**Denise A. Hinds, AUSA**
St. Croix, U.S.V.I.
      For the Plaintiff.

**Emile A. Henderson, III, Esq**.
      For the Defendant.

## MEMORANDUM OPINION

Gómez, C.J.

THIS MATTER is before the Court on defendant Kalif Flanders' ("Flanders") Appeal of the Magistrate's Order dated July 30, 2010 granting the Government's motion to detain Flanders,[1] and the Magistrate's Order of July 28, 2010 granting the Government's motion to preclude Flanders from calling adverse witnesses at his detention hearing.[2]

---

[1] The Order was signed July 30, 2010 and placed on the ECF docket on August 2, 2010.
[2] Co-defendant Gillian Harper ("Harper") filed a notice of joinder in the appeal of the Magistrate's Order dated July 30, 2010. However, the July 30, 2010 Order is only applicable to Flanders; a separate hearing for Harper was held on August 2, 2010 and a separate detention order issued. Harper lacks standing to appeal the detention order of

I. **Background**

   A. **Procedural Background**

On July 9, 2010, a six-count information was filed in the district court against Kalif Flanders and his co-defendant Gillian Harper charging them with the following crimes: (1) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) (Count I-Harper; Count II-Flanders);[3] (2) felon in possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 2, 922(q) and 924(a)(4) (Count III); (3) unauthorized possession of a firearm, in violation of local statute 14 V.I.C. §§ 11, 2253(a) (Count IV); (4) murder first degree, in violation of 14 V.I.C. §§ 11, 922(a)(1) and 923(a) (Count V); and (5) assault third degree, in violation of 14 V.I.C. §§ 11(a) and 297(2) (Count VI). A superseding information was brought against both Flanders and Harper on July 28, 2010 adding an additional count for using a handgun during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2).

On July 23, 2010, the Government filed a motion to detain the defendants. (Doc. No. 21.) In its motion, the Government relied on the affidavit of Virgin Islands Police Department Detective Cureene Smith. The facts in the affidavit are based on Smith's personal knowledge, the observations of other agents involved in the investigation and unidentified witnesses. Upon discovering that Flanders intended to call Smith at the detention hearing, the Government also filed a motion asking the Court to preclude the calling of Smith as an adverse witness. (Doc. No. 22.) The Government objected to Smith's appearance at the hearing on the ground that Smith

---

Flanders and thus his joinder will be denied. To the extent that Harper seeks to appeal his own detention order, such appeal is also denied for the reasons stated herein. Moreover, the Court notes that the weight of evidence is as strong if not stronger against Harper than against his co-defendant Flanders. Witnesses informed police that Harper had a firearm in his right back pocket shortly after leaving the scene of the murder. (Smith Aff. at 12.) In addition, a witness stated that Harper had accused the victim of breaking into his aunt's home and shooting at Harper, thus providing a motive for Harper to engage in an act of violence against the victim. (*Id*. at 11.) It is also noted that Harper has a drug conviction and a permanent restraining order against him in the Superior Court. (*Id*. at 4-7.)

[3] Flanders was charged with knowingly aiding and abetting Harper's felonious possession of a handgun under sections 2, 922(g)(1) and 924(a)(2) of Title 18, United States Code.

did not have any information that would be helpful to the Defendant. The Government also expressed concern that the examination of Smith could reveal the identity of the witnesses referenced in Smith's affidavit and place them in danger. (Mot. to Preclude at 5.) Flanders opposed the motion to preclude. (Doc. No. 35.) In his opposition, Flanders did not identify which witness he intended to call or what testimony he intended to elicit. Flanders only asserted that precluding him from calling "adverse witnesses" undercut his right to a full hearing. Flanders subsequently executed a subpoena on Detective Smith on July 28, 2010. (Doc. No. 38.) On the same day that the subpoena was served on Smith, the magistrate judge entered an order granting the Government's motion to preclude because it found "the government's argument persuasive" and noted that that the defendants did not have "an unqualified right to call adverse witnesses." (Doc. No. 40.) A detention hearing for Flanders was held on July 29, 2010, and on August 2, 2010, Flanders was ordered detained. (Doc. No. 48.) In response, Flanders filed a notice of appeal of the Magistrate's order of detention as well as the order granting the motion to preclude calling the adverse witness. (Doc. No. 52.)[4]

### B. The Detention Hearing

At his detention hearing, Flanders was present and represented by counsel. The Government presented arguments contained in its written motion as well as the sworn affidavit of Detective Smith. As noted above, Flanders had been precluded from calling Smith as an adverse witness. Flanders did not testify or call any other witnesses. Detective Smith's affidavit set forth the following pertinent facts.

On the morning of May 13, 2010, at approximately 7:37 a.m., the VIPD central dispatch began receiving a series of 911 phone calls reporting that two men were beating up another male

---

[4] Flanders filed a notice of appeal on August 2, 1010 (Doc. No. 52), and filed a brief in support of the appeal on August 19, 2010. (Doc. No. 81.)

in an open field behind the Evelyn Williams School, located in Mount Pleasant, on the island of St. Croix. The callers also stated that a single gunshot had been fired. (Smith Aff. at 7.) VIPD officers were dispatched to the school. Upon arrival, the VIPD found the lifeless body of a Hispanic male later identified as Louis Orlando Encarnacion ("Encarnacion") lying on the ground in a bushy area behind the Evelyn Williams School commonly referred to as "the Stables." (*Id.* at 7-8.)

Encarnacion was taken to the Juan Luis Hospital where he was pronounced dead at 10:37 a.m. An examination of Encarnacion's body revealed that he received a gunshot wound to the right side of the face next to the eye and trauma to the forehead. There were also lacerations to the left side of his head and back. (*Id*. at 9.)

VIPD later learned that Encarnacion had resided at #573 Estate Mount Pleasant ("Paradise") with relatives at the time of his death. (*Id*. at 7-8.) Mount Pleasant is located to south of the Evelyn Williams Elementary school. Flanders and Harper lived to the north of the school in the Paradise Mills Housing Project. (*Id*. at 8.) Witnesses stated that Flanders was seen knocking on the door of the victim's home at #573 Estate Mount Pleasant around 7:20 a.m. on the day of the murder.[5] Encarnacion came to the door and spoke to Flanders for a few minutes. About five minutes later, Encarnacion was observed walking away from the home with Flanders and heading in the general direction of where Encarnacion's dead body was later found. (*Id*. at 9-10.)

A witness, who knew Encarnacion and Harper, observed Encarnacion walking down the street in the direction of the Stables area with a taller black male and also observed Harper standing less than 150 feet down the street from where the victim and the man accompanying

---

[5] Flanders told police that he had been at the victim's house that morning at 6 a.m. and that he had gone there because he owed Encarnacion some money for a pair of slippers. (Smith Aff. At 13.)

him were walking. (*Id*. at 10.) Encarnacion and the taller black male were walking towards Harper. (*Id*.)[6] About ten to twenty minutes after Encarnacion and Flanders left Encarnacion's home together, between 7:30 and 7:40 a.m., witnesses heard a single gunshot. Another witness heard a gunshot in the area of the Stables around 7:30 a.m. and then immediately afterward observed Flanders and Harper walking away from the location where Encarnacion's body was found. The two men got into a vehicle, and were seen driving to the Paradise Mills Project, where they exited the car. (*Id*. at 12.)

A cell phone belonging to Flanders[7] was found at the crime scene, a few feet away from the victim's body. (*Id*. at 9.) Although Flanders told police that he had lost the phone prior to the murder, phone records revealed that an outgoing call was made from Flanders' cell phone to Harper's cell phone at 7:16 a.m. on the day of the homicide. (*Id*. at 12.) Phone records also revealed approximately 11 outgoing calls from Flanders' cell phone during the period of 7:26 a.m. – 7:35 a.m., including three from the phone's speed dial directory. (*Id*. at 13.) The last outgoing call made from the cell phone occurred at 7:26 a.m. on the day of the homicide. (*Id*.) In addition, a witness observed Flanders using a cell phone outside Encarnacion's home before Encarnacion came out of his house to meet Flanders. (*Id*. at 12.)

## II. Standard of Review

Pursuant to 18 U.S.C. § 3145 (b), "[i]f a person is ordered detained by a judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The district court reviews the pretrial detention order de novo and "should not simply defer to the judgment of the magistrate, but reach its own

---

[6] A witness told police that Harper had, prior to the homicide, accused Encarnacion of breaking into Harper's aunt's home and shooting him (Harper) several months prior to the homicide. (*Id*. at 11.)

[7] The day after the murder Flanders gave a statement to the VIPD in which he provided his cell phone number; the number provided matched the cell phone number of the phone found at the crime scene. (*Id*. at 12.)

independent conclusion." *United States v. Tyson*, 2008 WL 4415298, at *2 (D.V.I. Sept. 23, 2008) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir.1992); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985) (noting that a reviewing court "should fully reconsider a magistrate's denial of bail")); *cf. United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985) (holding that the Bail Reform Act, 18 U.S.C. § 3145(b), *et seq.*, contemplates de novo review by the district court of a magistrate's order for bail pending trial).

"In conducting a de novo review of a magistrate judge's pretrial detention order, the court may rely on the evidence presented before the magistrate judge." *Tyson*, 2008 WL 4415298 at *2 (citing *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.1990); *United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (noting that the court may incorporate the records of the proceedings and the exhibits before the magistrate judge)).

**III. Analysis**

**A. Applicable Bail Statute**

Flanders objects to the standard of review applied to determine his detention and his inability to examine Government witnesses at the detention hearing. The magistrate judge applied the Bail Reform Act (BRA), codified at 18 U.S.C. § 3142 *et seq.*, in determining the Government's detention motion. Flanders argues that § 3 of the Revised Organic Act ("ROA") rather than the BRA is applicable to a detention hearing for the local criminal counts.[8] Section 3 of the ROA provides that "[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, except for *first-degree murder* or any capital offense when the proof is evident or the presumption great." 48 U.S.C. § 1561 (emphasis added.) Flanders argues that the § 3 of the ROA requires the detention of a defendant accused of first degree murder only "when the proof

---

[8] Flanders cites the Virgin Islands Supreme Court's holding in *Browne v. People of the Virgin Islands*, 2008 WL 4132233, at *7 (V.I. 2008), in which the court held that § 3 was applicable to determine the detention of a defendant charged with first degree murder in the Superior Court of the Virgin Islands.

6

is evident or the presumption great." Thus, Flanders reasons, because his detention hinges upon the weight of evidence against him, the magistrate judge erred by limiting his ability to call witnesses. (Def. Opp. at 5-6.)

Flanders argument suffers for want of legal support. First, Flanders was not only charged with first degree murder; he was also charged with several federal firearms violations and for using a handgun during and in relation to a crime of violence. Flanders does not dispute that detention may be based on those federal charges. He also does not contest that a detention of a defendant based on those charges necessarily implicates the BRA. *See* Fed. R. Crim. P. 46 (providing that 18 U.S.C. §§ 3142 and 3144 govern pretrial release when a defendant is before a judicial officer for an offense against the United States).[9] *See also Government of Virgin Islands v. Ortiz*, 427 F.2d 1043, 1048 (3d Cir. 1970) (defendant in District Court of Virgin Islands entitled to bail hearing pursuant to the Federal Rules of Criminal Procedure).[10] Thus, the Court finds that the BRA, and not § 3 of the ROA, must be considered.

### B. Limitations on Witness Testimony at Detention Hearing

Flanders argues that the Magistrate Judge erred when he precluded Flanders from examining Officer Smith. That assertion is flawed. It is certainly true that "[p]retrial detention implicates a liberty interest and thus may not be imposed contrary to the mandates of procedural due process." *United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir. 1985) (citing *Morrissey v.*

---

[9] Section 3142 provides that a judicial officer shall order release or detention of a person charged with an offense upon determining what measures are needed to ensure the appearance of the person at trial and the safety of any other person and the community. 18.U.S.C. § 3142. Pursuant to § 3156, an "offense" is defined as "any criminal offense . . . which is in violation of an Act of Congress and is triable in any court established by Act of Congress." 18 U.S.C. § 1356.

[10] The court in *Ortiz* reasoned as follows: the federal rules of criminal procedure applied to criminal proceedings brought in the District Court of the Virgin Islands. *Ortiz*, 427 F.2d at 1047 n.9 (citing Fed. R. Crim. P. 54(a)(1), now set forth in Fed. R. Crim. P. 1). Thus defendant--who was in the District Court pursuant to a murder charge--was entitled to bail pursuant to Fed. R. Civ. P. 46(a)(1), which provided that "a person arrested for an offense not punishable by death shall be admitted to bail." *Id*. at 1048 (citing Fed. R. Crim. P. 46(a)(1)). Currently, Rule 46(a) provides that "the provisions of 18 U.S.C. §§ 3142 and 3144 govern pretrial release." Fed. R. Civ. P. 46(a).

7

*Brewer*, 408 U.S. 471, 482 (1972)). However, because due process is "flexible" and only "calls for such procedural protection as the particular situation demands" not every liberty interest requires "the full panoply of procedural safeguards available at a criminal trial." *Id.* In enacting the BRA, Congress provided procedural protections appropriate for the liberty interest at stake in pretrial detention: the defendant is afforded "an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2). However, Congress also recognized that "bail hearings should not become mini-trials." *Id.* at 1396. Accordingly, "the discretion lies with the district court to accept evidence by live testimony or proffer." *Delker*, 757 F.2d at 1396; *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) (same); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987) ("the government as well as the defense may proceed by proffering evidence subject to the discretion of the judicial officer presiding at the detention hearing"); 18 U.S.C. § 1342(f) ("[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration at the [bail] hearing.") Moreover, a defendant does not have an unqualified right to call an adverse witness. *Delker*, 757 F.2d at 1397; *United States v. Accetturo*, 783 F.2d 382, 388-89 (3d Cir. 1986); *Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

In *Delker*, the defendant challenged the admission of hearsay evidence presented during a detention hearing, arguing that he had a due process right to confront witnesses whose testimony linked him to the crimes charged. The hearsay evidence consisted of out-of-court statements made by witnesses and victims concerning the defendant's role in a racketeering conspiracy. The trial court had admitted the evidence and denied the defendant's request to subpoena material government witnesses. The Court of Appeals, having determined that the trial court was

8

authorized to proceed by live testimony or proffer, rejected the defendant's argument that hearsay was inadmissible under these circumstances or that the court erred by not granting the subpoena. *Delker,* 757 F.2d at 1397-98. However, it left open the question of "whether a defendant may have a right to confront non-appearing government witnesses when the defendant can make a specific proffer to the court of how the witness' testimony will negate the government's contention that the defendant is a danger to the community, or will rebut a presumption created by the statute that the defendant should be detained." *Id*. at 1398 n.4.

The Court of Appeals returned to that question in *United States v. Accetturo*, when it upheld the district court's refusal to compel the appearance of a government witness. 783 F.2d 382 (3d Cir. 1986). In that case, the charges against the defendant Accetturo had triggered the rebuttable presumption under 18 U.S.C. § 3142(e) that "no condition or combination of conditions will reasonably assure the safety of the community." *Id*. at 390. In the bail hearing, the government presented evidence of the defendants' criminal conduct through the testimony of an FBI agent, who in turn recounted the sworn testimony of a key government witness. *Id*. at 388. The defendants sought to subpeona this key government witness and proffered evidence tending to show that the witness had a criminal history, used drugs and had a history of psychiatric disorders. *Id*. The court found that because there was no reason to believe the witness would give evidence "favorable to [the defendant] or would retract information harmful to them" the defendants were not entitled as a matter of due process, to examine the witness during the hearing. *Id*. at 388-89. In other words, a defendant's desire to attack the witness's credibility by cross-examination is not sufficient to compel a trial court to proceed by live testimony rather than by proffer. Read together, *Delker* and *Accetturo* stand for the proposition that a defendant is not entitled to call a government witness at a detention hearing in the absence

of a proffer that the testimony will negate the Government's contention that he is a danger to the community, even when such a defendant is subject to the rebuttable presumption under § 3142(e).

Other circuit courts have similarly declined to circumscribe the discretionary powers of a judicial officer to proceed by proffer where the defendant has not directly challenged the testimony contained in the government's proffer. *See, e.g., Winsor*, 785 F.2d at 757 (9th Cir. 1986) ("Without a proffer from [the defendant] that the government's proffered information was incorrect, the magistrate was not required to allow [the defendant] to cross-examine the investigators and police officers"); *United States v. Joost*, 1994 WL 667011, at *4 (1st Cir. 1994) (unpublished opinion) (finding no error in denying defendant cross-examination of a government witness where the defendant's proffer had no bearing on allegations contained in the witness's affidavit, allegations which supported the finding of dangerousness).

Like the defendants in *Accetturo*, Flanders has been charged with crimes that subject him to the rebuttable presumption of dangerousness pursuant to 18 U.S.C. § 3142(e). When a defendant is subject to this rebuttable presumption, he "must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). Given this burden of production, there is a heightened concern that the defendant be given an opportunity to present evidence in his favor.

Here, however, Flanders has not proffered any evidence with respect to the testimony of Detective Smith. He has not asserted that Smith's testimony will be "favorable" to him or "would retract information harmful" to him. *Accetturo,* 783 F.2d at 388-89. He does not even assert that cross-examination will cast doubt on the credibility of Smith. Flanders merely makes

the bald assertion that he has an unconditional right to confront an adverse witness in a detention hearing. As discussed, *Delker* and *Accetturo* belie that assertion.[11]

Furthermore, when there is a need to protect the identity of potential government witnesses, a court is justified in "the use of procedures less demanding than those applicable to a 'full-blown trial.'" *Id.* at 390 (citing *Delker*, 757 F.2d at 1398) (affirming district court's ruling that government witness did not have to answer questions about "confidential sources" at detention hearing "in light of the legitimate and established governmental interest in protecting government witnesses."). Moreover, the court must act expeditiously in determining whether to detain the defendant and not "unnecessarily transform[] the bail hearing into a full-fledged trial or defendant's discovery expedition." *Id.* (quoting *United States v. Acevedo-Ramos*, 755 F.2d 203, 207-08 (1st Cir.1985)). "A pretrial detention hearing . . . is neither a discovery device for the defense nor a trial on the merits." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.C. 1996).

In this case, the Government feared that the examination of its case agent would reveal the identity of the eye-witnesses referenced in the agent's affidavit, thereby placing those witnesses in danger. As the Government explained in its motion to preclude, most of the witnesses were, like Flanders and Harper, residents of Estate Paradise, a small community where the witnesses, if identified, could be endangered. In addition, Flanders has not pointed to any testimony he intends to elicit from Smith which would be favorable to him. He also has not contested the accuracy of the facts asserted in the affidavit proffered by the Government. The Court thus concludes that it was proper to proceed on the Government's detention motion by

---

[11] The Court recognizes the difficulty faced by defendants in opposing a detention motion based on hearsay evidence. *Accetturo*, 783 F.2d at 390. Such defendants are not without any relief. "Congress' authorization of hearsay evidence does not represent a determination that such evidence is always appropriate." *Id.* A judicial officer may "require more when tendered hearsay evidence does not rise to the required level of reliability." *Id.* Here, the statements made by witnesses contained in the Smith Affidavit are consistent and Defendant has not tendered conflicting evidence.

proffer.  Similarly, it was proper to decline to expand the scope of this hearing by compelling the appearance of Detective Smith.

**C. The Merits of Detention**

Pursuant to section 3142(f) of the Bail Reform Act, the Court is required to hold a detention hearing upon motion of the Government in a case involving, *inter alia,* a crime of violence, an offense for which the maximum sentence is life in prison, or a felony that involves the use of a firearm.  18 U.S.C. §§ 3142(f)(1)(A), (B), and (E).  In this case, the Government moved for detention on the grounds that Flanders had been charged with a crime of violence and for an offense involving the use of a firearm, and that there was a serious risk that Flanders would flee and obstruct justice.  (Gov't Mot. for Detention at 2.)  As previously noted, Flanders was charged with using a handgun during and in relation to a crime of violence, in addition to first degree murder, a crime that carries a mandatory life sentence.  *See* 14 V.I.C. 923(a) ("Whoever commits murder in the first degree shall be imprisoned for the remainder of his natural life without parole.").  Accordingly, the charges brought against Flanders require a pretrial detention hearing.

After conducting such a hearing, a judicial officer is authorized to order pretrial detention of a defendant upon determining that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  The following four factors are considered when deciding whether to order detention:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person including--
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142 (g).

To justify pretrial detention, the government must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence. *United States v. Richardson*, 2009 WL 2044616, at *3 (D.V.I. July 9, 2009) (citing *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir.1986); 18 U.S.C. § 3142(f); *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir.1986)).

A finding by the judicial officer that there is probable cause to believe the defendant committed an offense under 18 U.S.C. § 924(c) raises a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."[12] 18 U.S.C. § 3142(e)(2). That finding is obviated where a defendant is charged in an indictment, however, as "the indictment is sufficient to

---

[12] As noted above, Flanders has been charged with a violation of § 924(c)(1)(A) and (2). Section 924(c) provides that

>any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(a)(A)(i).

support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). "[T]he filing of an information in the Virgin Islands is the *full equivalent* of the presentment of an indictment by a grand jury." *Rivera v. Government of Virgin Islands*, 375 F.2d 988, 990 (3d Cir. 1967) (emphasis supplied). Thus, in the Virgin Islands, an information similarly supports a finding of probable cause to trigger the rebuttable presumption. Applying that standard, the Court finds that there is a rebuttable presumption that any pretrial release of Flanders will present a danger to the community.

To rebut that presumption, Flanders was required to produce "some credible evidence" supporting his contention that "he will appear and will not pose a threat to the community. *Carbone*, 793 F.2d 559, 560 (3d Cir.1986) (citing *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985)). Flanders did not present any testimony establishing either his appearance at trial or the safety of the community. Moreover, consideration of the factors under § 3142 (g), also militates in favor of detention. First, the nature of the crime counsels in favor of detention. The crime charged is a crime of violence, a crime that was carried out with a firearm and in the vicinity of a school. There was also evidence that the killing was an act of retaliation and was done with brutality. Second, the weight of evidence against Flanders, as noted above, is substantial. Third, at the time the crime was committed, Flanders had charges of aggravated assault and battery and domestic violence pending against him in the Virgin Islands Superior Court. Flanders has been arrested twice on those charges, the earlier arrest occurring on July 15, 2009, and the later arrest occurring on January 6, 2010. Thus, even without the application of the rebuttable presumption, the above-enumerated facts constitute clear and convincing evidence that Flanders presents a danger to the community. While there is no evidence on record that Flanders presents a flight

risk, neither is there evidence that he has any ties to the community or any other evidence to rebut a risk of flight.

**IV.     Conclusion**

For the foregoing reasons, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community and will accordingly deny Flanders' motion for revocation of the Magistrate Judge's order of pretrial detention.  An appropriate order accompanies this Memorandum Opinion.

**ENTER**:

Dated: October 15, 2010

S\_____
CURTIS V. GÓMEZ
CHIEF JUDGE